GREENBERG REALTY COMPANY, Respondent, vs. CREAM CITY ROOFING & PAINT MANUFACTURING COMPANY, Appellant.

*February 14—March 11, 1924.*

*Sales: Warranty, express and implied: Guaranteed roofing: Repairs and replacements: Damages.*

1. Where a ten-year guaranty of roofing was executed pursuant to the provisions of a contract and constituted a part of the consideration, it was immaterial whether it was executed contemporaneously with the contract or subsequently thereto, as sub. (4), sec. 1684*t*—15, Stats. 1921, relating to implied warranties as to fitness where an article is sold under a trade name, did not apply, the guaranty being express and not implied.  p. 263.
2. Such a guaranty did not require that the roofing remain in perfect condition during the guaranty period so that there would be no need of attention by way of repair, but did require a good substantial roofing that would serve the purpose for which it was intended for such period.  p. 263.
3. Where the roofing was unsuitable from the beginning to furnish proper protection as designed, and developed defects beyond repair, it became the duty of the seller to remove it and replace it with a roof that would answer the demands of the specifications.  p. 264.
4. In an action against the seller for breach of the guaranty, the roofing not complying with the specifications and, as the jury found, not being suitable for the purpose for which it was intended, the court did not err in refusing to permit a witness

to answer the question, "Now, just assuming that this roof is as the plaintiff alleges, that it is worthless, can you say what a roof similar to that would cost to put a new one on?" since a similar roof would not constitute a proper roof for reconstruction.  p. 265.

5. The owner of the building was not entitled to recover from the seller of the roofing damages caused to the merchandise of a tenant in the building because of the defective roof, because in the absence of an express provision in the lease the tenant took the building in the condition it was in at the time it assumed its occupancy, and the lessor would not be liable on account of the leaky condition of the roof, and hence could not recover therefor from the defendant who furnished the roofing.  p. 265.

6. Such owner was entitled to recover the amount paid in making repairs to the roof after failure of the seller to make such repairs.  p. 266.

APPEAL from a judgment of the circuit court for Juneau county: E. W. CROSBY, Circuit Judge. *Modified and affirmed.*

For the appellant there was a brief by *Samuel Wright,* attorney, and *Houghton, Neelen & Houghton,* of counsel, all of Milwaukee, and oral argument by *Albert B. Houghton.*

For the respondent there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

DOERFLER, J.  In the year 1916 the plaintiff, a corporation, entered into a contract with one Farley for the construction of a certain store building at Necedah, Wisconsin, pursuant to certain specifications, among which was the following:

"The main roof and pent-house is to be covered with an asbestos built-up four-ply salamander roofing as manufactured by the H. W. Johns-Manville Company, or equal, and in accordance with manufacturer's standard specifications. . . . All roofing to be laid by the manufacturers or their agents and guaranteed by them for a period of ten years against leaks or defects of any kind."

The defendant, a corporation located at Milwaukee, Wisconsin, was a western representative of the National Roofing Company, and its agent, who examined the specifications, based his estimates thereon, and then represented to the plaintiff that the roofing furnished by the National Roofing Company was equal to that specified in the specifications, and thereupon made an offer for the furnishing of the roofing, and the offer so made having been submitted was accepted by the plaintiff upon condition that the defendant would furnish a ten-year guaranty in accordance with the specifications. Thereafter the defendant proceeded with the placing of the roofing upon the building, and on or about the 19th day of September, 1916, executed and delivered to the plaintiff its written guaranty as follows, to wit:

"We hereby guarantee the Security Wide Weld Asphalt Roofing [this being the roofing manufactured by the National Roofing Company], placed on roof of *Greenberg Realty Company's* building, . . . for a period of ten years from date hereof (September 1, 1916), by agreeing to make good any defects therein that may arise.

"We further agree that at any time we are notified, during the guarantee period, that said roof leaks, we will promptly send a special man to Necedah and have the roof repaired satisfactorily to the owner at our expense.

"This guarantee does not hold good in case of cyclones, tornadoes, hail storms, or extremely high winds."

Immediately after the laying of this roof it was observed that the roof leaked, and in fact, from that time on until the year 1921, numerous well-founded complaints were made by the plaintiff to the defendant on account of the leaky condition of the roof. The defendant at numerous times attempted to make repairs of the roof, without succeeding in stopping the leaks. In fact, during the entire period, with the exception perhaps of the greater part of the year 1918, complaints were almost continuous, and a great many efforts

were made during such period, on the part of the defendant, to place such roof in a proper condition.

The building itself was leased to and occupied by Greenberg & Sons Company, a mercantile company, and the evidence shows that considerable damage to its stock of merchandise resulted from the leaky condition of the roof. The walls and ceilings of the building were damaged by water leaking through the roof, and the attention of the defendant from time to time was called thereto. The roof in question was almost flat, and the evidence shows that the roofing used was not suitable for that kind of a roof, and that the only roofing which is suitable is one that complies with the specifications above referred to.

The action was brought to recover damages for breach of the guaranty, for damage to the walls of the building, for expense incurred in making necessary repairs, and for damage to merchandise. In its special verdict the jury found (1) that the roofing was not reasonably fit for the purpose intended; (2) that the roofing developed defects prior to January 1, 1921, for which the defendant was responsible; (3) that the defendant failed to repair or remedy such defects in a satisfactory manner; (4) that the reasonable cost of replacing the roof by a roofing reasonably fit for the purpose intended is $640; (5) that the walls and ceilings of the building suffered damage by reason of the leaky condition of the roof prior to January 1, 1921; (6) that the merchandise in the building suffered damage for which the defendant was responsible; (7) that the plaintiff hired persons to make repairs on the roofing in question; (8) that the plaintiff's damage as to question numbered 5 is $100; as to question numbered 6, $75; as to question numbered 7, $26.81. For the amount of the damage so found judgment was ordered and entered in plaintiff's favor, and from this judgment the defendant appealed.

Defendant's counsel first contend that the answers to questions 1 and 4 cannot be considered in support of the

Greenberg Realty Co. v. Cream City R. & P. M. Co. 183 Wis. 259.

judgment. It is argued that the roofing was sold under its trade name, and that therefore under the provisions of sub. (4), sec. 1684t—15, Stats., there is no implied warranty as to its fitness for any particular purpose. The provision of the statute referred to is as follows:

"In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

The contract in question was entered into some time prior to the execution of the guaranty, and expressly provided for a ten-year guaranty. The guaranty was executed pursuant to the provisions of the contract and constituted a part of the consideration. It is immaterial, therefore, whether the guaranty was executed contemporaneously with the contract or whether it was subsequently executed. As an inducement to obtaining the consent of the plaintiff to the substitution of the roofing manufactured by the National Roofing Company, in place of that provided for in the written specifications above referred to, the defendant represented its roofing as being equal to that of the H.'W. Johns-Manville product. The testimony is quite persuasive that roofing constructed like that furnished by the defendant is not suitable for a flat roof such as was specified for the plaintiff's building. It appears from the evidence that in the course of time numerous defects appeared in the roofing, due not only to improper workmanship but to the quality of the material and the character of its composition. The parties to the contract had in mind a roof that would remain substantially whole, serviceable, and intact for the period of ten years. There is nothing implied about this; on the contrary it is express. While a guaranty covering such a period of time, properly construed, does not signify that the roof will remain in perfect condition during the guaranty period, on the contrary it does signify that occasions may arise where such roofing may need attention by way of repair, but that the roofing itself otherwise constitutes a good substantial roofing that

will serve for the purpose for which it was intended a period of at least ten years. The roofing in question at no time was in compliance with the provisions of the contract and the specifications thereunder. Instead of affording a protection from the elements, which good roofing material affords, it was a source of almost continuous annoyance, trouble, and damage. The building was designed for a mercantile building. The occupant of the building, a mercantile company, was in a continuous fret and stew on account of the leaky condition of this roof. We can truthfully say from the record that the patience exhibited by the plaintiff during the six years in question was far beyond the ordinary. That the roof was defective in its composition was even admitted by one of the representatives of the defendant.

In view, therefore, of the fact that the roofing was unsuitable to furnish proper protection as designed, and that it developed defects in its composition which were beyond repair, it became the duty in law of the defendant to remove the unsatisfactory and unsuitable roof and replace it with one that would answer the demands of the specifications.

The statute above set forth refers to a patented article sold by its trade name. Here, however, we have a sale not only of an article by its trade name, but a contract calling for a guaranty and the actual execution of a guaranty. The case of *Northwestern Blaugas Co. v. Guild,* 169 Wis. 98, 171 N. W. 662, and other cases relied upon by defendant's counsel, are therefore not in point.

Defendant's counsel argue error for the refusal of the court to permit a witness to answer the following question: "Q. Now, just assuming that this roof is as the plaintiff alleges, that it is worthless, can you say what a roof similar to that would cost to put a new one on?" Here again we must bear in mind the evidence as to the character of this roofing and of the roof itself. Farley, the contractor, testified: "In my judgment, I don't think that the roof can ever be fixed up or patched up satisfactorily. It can't be done.

My explanation is that there is only one kind of roof to be put on a building like that, and that is a built-up roof." It was established, and so found by the jury, that the roofing furnished by the defendant was not suitable for the purpose for which it was intended. The question submitted implied a reconstruction of a roof of material such as was manufactured by the National Roofing Company. Such a roof, therefore, would not answer the calls of the specifications— would not constitute a suitable roof. It became necessary to furnish a roof that was suitable and did answer the calls of the specifications. Therefore this question was improper, and the court was right in sustaining the objection thereto of plaintiff's counsel.

Defendant's counsel further argue that plaintiff was not entitled to recover for the damage done to the merchandise, and in that behalf the claim is made that the merchandise was owned by the Greenberg & Sons Company, the mercantile company, while the building itself was owned by the plaintiff. In the absence of an express provision in the lease the mercantile company took the building in the condition in which it was in at the time it assumed its occupancy, and the plaintiff would not be liable for damages subsequently accruing on account of the leaky condition of the roof. The evidence does not show that the damage to the merchandise was occasioned during the period that the actual repairs were made. Whatever damage there was resulted from the character of the roof placed upon the building. If the plaintiff could not be held liable by the mercantile company for the damage, it could not assume a liability which it could pass on to the defendant. We are therefore of the opinion that the answer of the jury to the sixth question and that portion of the eighth question fixing the amount of such damage cannot be sustained.

Can the plaintiff recover for its disbursements in its effort to make repairs on the roof, the amount whereof was fixed by the jury at $26.81? The record is replete with evidence

showing that numerous requests were made of the defendant to comply with its guaranty and to repair the roof, and that on numerous occasions it failed to heed such requests. Under these circumstances the plaintiff was not obliged to remain idle and permit the elements to damage the building, but was authorized to do that which was necessary to minimize its damages.

After verdict the defendant also made a motion for a new trial upon newly-discovered evidence. This motion was denied for the reason that the defendant did not exercise proper diligence in procuring the evidence so that it could have been used upon the trial. We have read the affidavits upon which this motion was based, and in view of the highly discretionary power of the court with respect to motions of this nature we cannot say that the court committed error in denying such motion.

Under the provisions of sec. 3049a, Stats., plaintiff brings up for review the alleged inadequacy of the damages awarded by the jury. In the first place, the claim is made that the sum of $640, cost of replacing the roof, is inadequate. On this question we will say that there is a fair conflict in the evidence, and that there was sufficient evidence in the record to sustain the jury's finding, and that such finding must therefore stand.

The jury allowed $100 as damages for injury to the ceilings and walls. Under the undisputed evidence in the case the minimum of damages amounts to $412.40. Such being the case, the sum of $312.40 should be added to the judgment.

In its complaint plaintiff claimed damages for $26.81 for moneys actually expended in making temporary repairs of the roof at times when the defendant failed to make repairs in accordance with the guaranty. Evidence was introduced for the purpose of showing that in addition to this amount the plaintiff sustained additional damage in the sum of $200. Greenberg, an officer of the plaintiff, testified that he em-

ployed a carpenter to repair the roof, to whom he paid the sum of $26.81. He also testified that plaintiff's employees at times were engaged shoveling snow off of the roof; and also that he had paid the janitor $200 extra, covering a period of three years. Thereafter he testified that he did not pay the janitor, but that the people employed by him put in time equivalent to $200. Outside of the fact that these employees were engaged in shoveling snow off of the roof, there is no evidence that they actually performed work and labor in and about the repair of the roof. The evidence is unsatisfactory and contradictory. As to this $200 item, it would appear that the jury was fully justified in discrediting the testimony upon this subject, and that it was fully warranted in fixing the damages at the sum of $26.81, the amount actually paid to the carpenter.

It follows from the foregoing that the amount of the judgment must be diminished by the sum of $75, allowed by the jury for damage to the merchandise, and to such judgment as so diminished there must be added the difference of $412.40, the damage as shown by the undisputed evidence to the walls and ceilings, less the sum of $100 allowed by the jury, namely, $312.40. This would increase the judgment by the sum of $237.40.

*By the Court.*—The judgment of the lower court is modified by adding thereto the sum of $237.40, and as so modified is affirmed.