525 MAIN STREET CORP., PLAINTIFF-APPELLANT, v. EAGLE ROOFING CO., INC., DEFENDANT-RESPONDENT.

Argued November 21, 1960—Decided February 20, 1961.

*Mr. Alvin Weiss* argued the cause for appellant (*Messrs. Riker, Danzig, Marsh & Scherer,* attorneys; *Mr. Charles Danzig,* of counsel; *Mr. Alvin Weiss,* on the brief).

*Mr. Arthur E. Dienst* argued the cause for respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J.   Under a written contract with plaintiff's assignor, defendant repaired a roof and gave a 5-year guarantee against leaks with a promise to repair during that period.   The trial court found defendant breached its contract but awarded only the nominal sum of six cents. The Appellate Division affirmed, and we granted plaintiff's petition for certification.   33 *N. J.* 327 (1960).

The building, a large industrial structure, was erected in or about 1943.   The contract here involved was made in 1955.   During the negotiations defendant observed that leaks were caused by the emergence of nail heads through the felt and asphalt covering.   The nails had been driven during the original construction of the building in order to hold sheathing boards to the rafters.   For one reason or another, the nail heads worked their way through the roofing.   In addition, defendant noticed the roof had settled near the drains causing water to accumulate.   In that setting, the contract was made.   Defendant's work proved effective for a period of about two years, following which nail heads again emerged in some abundance, and according to defendant, the areas around the drains again sagged with resulting pockets of water.   Defendant made a number of repairs but after a period disputed the scope of its responsibility.   There-

upon plaintiff engaged another contractor to do a new job, having apparently concluded that the incidence of leaks was too great to permit any other course.

As we have said, the trial court found defendant breached its guarantee and covenant to repair, a finding which is well supported by the evidence and which we see no reason to disturb.

Thus the sole issue is one of damages. Compensatory damages are designed "to put the injured party in as good a position as he would have had if performance had been rendered as promised." 5 *Corbin, Contracts* § 992, *p.* 5 (1951) ; 1 *Restatement, Contracts* § 329, comment *a* (1932) ; see *Giumarra v. Harrington Heights, Inc.,* 33 *N. J. Super.* 178, 196 *(App. Div.* 1954), aff'd 18 *N. J.* 548 (1955). Although specific rules are formulated for sundry situations, they are subordinate to this broad purpose. Hence a given formula is improvidently invoked if it defeats a common sense solution.

Defendant urges the controlling rule of damages is the difference between the value of the entire building with the defective roof and the value of the building if the contract had been performed. Quite obviously this would be an awkward approach to the present controversy. In the first place, the roof is a sufficiently discrete item to permit a solution in terms of it alone rather than in terms of the total physical entity, *i. e.,* the building. If a controversy revolved about a hubcap or automobile battery, one would hardly search for differences in value of the whole vehicle. That approach would be labored and unrewarding. Secondly, there is no apparent reason to deal with differences in value rather than the cost of remedying the broken promise.

Reference is made to *Rempfer v. Deerfield Packing Corp.,* 4 *N. J.* 135 (1950), and *Ciminelli v. Umland Bros., Inc.,* 236 *App. Div.* 154, 258 *N. Y. S.* 143 *(App. Div.* 1932).

*Rempfer* involved tortious injury to realty. The court there said that while diminution in value is the measure of

damages, the cost of repair is a proper element to consider in ascertaining the amount of that diminution (4 *N. J., p.* 147). But a tortious injury cannot always be equated with a breached contract. In the former, the amount of the injury inflicted is the subject, whereas in the latter the claimant seeks the benefit of a promise he bought. See Annotation, 123 *A. L. R.* 515, 519 (1939). Moreover *Rempfer* does not mean that if a porch railing were tortiously damaged, it would be necessary to think in terms of the value of the whole building. It would be otherwise if the owner of a wrecked Model-T Ford sought the cost of restoration. The answer rests in good sense rather than in a mechanical application of a single formula.

In *Ciminelli,* where damages were sought for improper performance of a roofing contract, the New York court held the measure of damages was the loss of value in terms of the total structure, with the costs of repair being merely evidential of the amount of the loss. It may be doubted the case remains authoritative in that state. See *Bellizzi v. Huntley Estates, Inc.,* 3 *N. Y. 2d* 112, 164 *N. Y. S. 2d* 395, 143 *N. E. 2d* 802 (*Ct. App.* 1957); Annotation, 123 *A. L. R.* 515, 525 (1939). At any rate, the general rule with respect to building contracts is that the disappointed owner may recover the costs of completing the promised performance or making necessary repairs, unless under the facts it is impossible to do so or the costs of completion or repairs would constitute unreasonable economic waste, in which event reference would be made to the difference in value formula. 1 *Restatement, Contracts* § 346(1)(a)(1932); 5 *Corbin, Contracts* § 1089, *p.* 408 (1951); *McCormick, Damages* § 168, *p.* 648 (1935); 5 *Williston, Contracts* (*rev. ed.* 1937), § 1363, *p.* 3825; Annotation, 123 *A. L. R.* 515 (1939).

In the present case, the cost of repairs, or the cost of replacement if replacement is necessary to obtain the promised performance, is the appropriate approach without reference to the value of the building as an entity. See

*Van Dusen Aircraft Supplies, Inc. v. Terminal Const. Corp.,* 3 *N. J.* 321, 329 (1949); *Drummond v. Hughes,* 91 *N. J. L.* 563, 565 (*E. & A.* 1918); *Brown v. Nevins,* 84 *N. J. L.* 215 (*Sup. Ct.* 1913); *North Bergen Board of Education v. Jaeger,* 67 *N. J. L.* 39 (*Sup. Ct.* 1901).

Here defendant, for the sum of $9,800, agreed to do delineated work, which it guaranteed and agreed to repair in the following terms:

"This work is guaranteed for a period of (5) five years from the date of completion against any and all leaks or defects due to natural causes and repairs shall be made during the period of this guarantee without cost to us [plaintiff's assignor]."

■ Since the purpose of a damage award is to give the claimant the benefit of the broken promise, we must first identify that benefit. The question is whether the parties bargained (1) for a 5-year result or (2) for work of greater expectable life but supported by a guarantee for a portion of that period. If roof work were involved with a life expectancy exceeding the period of the guarantee, the measure of damages might not be confined by the unexpired portion of the guarantee. Here, however, it is perfectly clear from the record that the parties bargained for a 5-year result— a roof which would serve as a roof for that period with the aid of such repairs as might occasionally be required, and we so find.

■ The next question is whether defendant failed to deliver what was bargained for. Defendant's work served the contemplated end for some 2 years. For a brief period repairs were made, following which plaintiff had the roof renewed. Defendant's guarantee then had about 2½ years to run. The effect of plaintiff's action was to prevent further performance of defendant's covenant to repair. The issue at this juncture is whether defendant's breach justified plaintiff in having the work redone or replaced. The parties contemplated that the roof should serve as a roof. If the roof was so much a sieve that further repairs by defendant

would not be the reasonable course, plaintiff was justified in doing what it did. See *Greenberg Really Co. v. Cream City Roofing & Paint Mfg. Co.*, 183 *Wis.* 259, 197 *N. W.* 815 (*Sup. Ct.* 1924); *cf. Otto Misch Co. v. E. E. Davis Co.*, 241 *Mich.* 285, 217 *N. W.* 38 (*Sup. Ct.* 1928). It is not clear whether the trial court or Appellate Division made a finding either way. We think the evidence warrants an original finding by us that plaintiff was justified in its action. The property of tenants was imperiled. Time intervals between leaks and repairs were inevitable. Since the incidence of leaks was such that mere repairs would not be the realistic approach, it was incumbent upon defendant to take broader measures to make the roof a serviceable cover, and plaintiff was entitled to engage another to that end when defendant refused to perform.

The question then is whether there was sufficient proof of the amount of damages. There was no testimony as to the actual cost of the new work which in fact was done nor a description of its nature to permit a comparison between its benefit and the benefit defendant failed to deliver. Plaintiff's expert did testify hypothetically that it would cost $8,000 to make the roof watertight. But again that testimony was not sufficiently detailed with respect to the life expectancy of the work the witness had in mind. Perhaps the reason was that at that point the trial judge appeared to have embraced the formula urged by defendant requiring proof of the difference in values of the building as an entity and to have rejected plaintiff's thesis that the formula should be the cost of making good defendant's default. At any rate, the trial court's ruling requires us to permit plaintiff to pursue that approach at a retrial.

█ Plaintiff urges there is evidence to warrant an award of $9,000. Reference is made to the fact that in the negotiations which preceded the making of the contract, defendant offered to do the same work with a 2-year guarantee for $9,000. What is lacking is evidence that it would have been reasonable for plaintiff to contract for a 2-year result

after defendant's default. The point is more clearly made by assuming the 5-year guarantee had but one month to run. Surely no one would contract for a one-month roof. That course would involve unreasonable economic waste. Indeed one might infer from the negotiations in 1955 that plaintiff's assignor regarded a 2-year result as an imprudent thing to buy since it rejected defendant's offer and bargained for a 5-year result for $9,800. There is no point in pursuing further a discussion which on this record would be purely hypothetical, except to say that if reason required the purchase of a result serviceable for more than the balance of the guarantee, defendant could not be chargeable with the entire cost. Rather defendant would be chargeable with a portion of that cost prorated for the unexpired portion of defendant's guarantee unless the total circumstances should indicate the resulting figure should be modified.

However, the record is sufficient for a substantial judgment upon another formula of which surely defendant cannot complain. The parties contracted for a 5-year result. Plaintiff should at least receive a portion of the contract price paid to defendant, prorated for the balance of the 5-year period. In the absence of other testimony as to damages, a proration makes sense. It would be fair to the litigants, and that, after all, is the ultimate test of the correctness of an award. If plaintiff is content with a judgment on that basis, the trial court shall so order on plaintiff's motion. If plaintiff, however, wishes to pursue the other approach based upon the cost of redoing the roof, it is entitled to that opportunity.

The judgment is reversed and the matter remanded for further proceedings with respect to the issue of damages in accordance with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices FRANCIS, PROCTOR, HALL and SCHETTINO—5.

*For affirmance*—None.