# HILSENROTH v KESSLER, et al. and KESSLER v HILSENROTH

## Case Nos. 75-39659 CA 12 and 79-6349 CA 12 (Consolidated)

Eleventh Judicial Circuit, Dade County

January 9, 1985

### APPEARANCES OF COUNSEL

**Herbert Stettin, Lapidus & Stettin,** for plaintiff.
**Sheldon Rosenberg** for defendant, Kessler.
**James Horland** for defendant, Dominic.

### OPINION OF THE COURT

CHARLES D. EDELSTEIN, Acting Circuit Judge.

### THE FACTS

In 1972 sellers (Kessler et. al) purchased a tract of undeveloped land in North Miami Beach for approximately $500,000. They acquired the property subject to a first mortgage after making a minimal down

payment. In 1973 sellers sold the property to the buyer (Hilsenroth) for $1 million. Buyer assumed the first mortgage, gave the seller a $200,000 down payment and executed a note and mortgage for the difference. Buyer demanded a clause forgiving interest and deferring principal payments during the duration of any moratorium which prevented construction on the property. Buyer's expressed intention was to build multi-family units on the property.

After the closing, he spent approximately $11,000 toward development, stopping three months later when he discovered a sewer moratorium on the property. The buyer sued successfully to enforce the interest waiver and principal deferment clause. He then unsuccessfully sought recession. The court there held he had elected his remedy by his earlier suit and left him to sue for damages.

Buyer later sued for damages, meanwhile the moratorium was lifted and seller sought foreclosure. These two actions have been consolidated. During this period buyer claimed he expended over $400,00 to pay real estate taxes, interest and principal on the first mortgage, legal fees and the like. He sought damages and pre-judgment interest on the benefit of the bargain theory and also sought damages and pre-judgment interest on the out-of-pocket theory. Moreover, he demanded his damages be paid in current dollars as opposed to 1973 dollars.

Prior to the trial, the Judge then sitting considered the seller's statute of limitations defense to the buyer's complaint for damages and subsequently heard testimony relating to damages. He did so sitting without a jury. By stipulation, the undersigned heard testimony on liability, read the transcripts from the hearing on damages, and rendered a decision. The court found sellers had breached the warranty and that seller (Kessler) committed fraud by failing to disclose his knowledge of the moratorium.

The buyer did not seek loss of profits since had there been no moratorium and had the units been constructed, they would have hit the market during the 1974-75 recession. In fact, there might have even been a loss.

The trial court awarded punitive damages for the fraud and compensatory damages representing Buyer's out-of-pocket expenses incurred from the date of closing till the discovery of the moratorium. The trial court stated:

". . . HILSENROTH'S compensatory damages upon both the breach of contractual warranty and the fraud and deceit causes of action is limited to his out-of-pocket expenses incurred in reliance upon the development of the property from the time of the closing

**77**

on June 27, 1973, until the filing of the suit for declaratory relief to enforce the moratorium on payment of principal and interest under the purchase money mortgage in October, 1973.

Such damages include neither the "out-of-pocket" or "benefit of the bargain" theories of recovery sought by HILSENROTH, as he ratified the purchase by filing the declaratory relief suit in October, 1973.

. . . In effect, HILSENROTH seeks to make defendants guarantors of a successful outcome. If the moratorium were lifted early he might have been able to develop the property as planned and reap anticipated profits. If the moratorium remained longer than expected, then under his theory of damages he could recoup his expected profits from the defendants. . ."

An appeal ensued. The appellate court affirmed the finding of fraud and breach of warranty. It reversed the punitive damages awarded as time barred. On compensatory damages the Court held:

"Accordingly, we must remand to the trial court for a determination of the amount of reduction which the purchaser is entitled to because of the seller's fraud. In doing so, we direct that the trial court should allow a setoff for out-of-pocket expenses or damages for loss of the benefit of the bargain. See DuPuis v. 79th St. Hotel, Inc., 231 So.2d 532 (Fla. 3d DCA 1970), cert. denied, 238 So.2d 105 (Fla. 1970)."

As to the buyer's duty to mitigate, the Court stated:

"We reject the seller's contention that Hilsenroth's failure to mitigate damages by building his own sewage plant precluded damages based on these theories. Were we to require that such action be taken by the purchaser, we would be rewriting the parties' contract which contemplated a governmental sewage plant. See Richard v. A. Waldman & Sons, Inc., 323 A.2d 307 (Conn. 1967) (parties are not required to give up a substantial right of their own to minimize the loss)."

On motion for clarifications, the District Court of Appeal added a footnote:

"The fact that Hilsenroth was not required to mitigate his damages by building his own sewage plant does not relieve him of the duty to keep his damages as low as reasonably possible. See Richard v. A. Waldman & Sons, Inc., at 310-311. Accordingly, except as noted, the trial court is free to apply the doctrine of mitigation of damages, if applicable."

78

On remand the parties agreed to submit the issue of damages to the undersigned solely upon the testimony presented to the Judge who heard that testimony. Since the undersigned is in no better position to judge the credibility of those witnesses than the appellate court, the normal presumption of correctness attaching to a trial court's findings of fact disappears. In effect the hearing on appeal will be de novo.

## THE LAW

In awarding damages the court should award a sum as will compensate the injured party for the loss sustained with the least burden to the wrongdoer consistent with the idea of fair compensation. See e.g. 25 CJS *Damages* § 71.

In *DuPuis v. The 79th Street Hotel, Inc.,* 231 So.2d 532 (Fla. 3d DCA 1970) (noted with approval in the District Court's opinion in the case at bar at 446 So.2d 147) the Court adopted the language of 34 Am. Jur. *Fraud & Deceit* § 352, thereby settling for Florida what has been a topic of much dispute among the cases. See Annot. 13 ALR 3d 881 *Damages-Fraudulent Representation.*

"It would appear that the Florida courts have adopted and followed both rules [benefit of the bargain & out-of-pocket] in order to do such justice as the circumstances may demand.

This is in accordance with the flexibility theory set forth in 37 Am. Jur. 2d *Fraud and Deceit,* § 352. This formula is stated as follows:

" . . (1) if the defrauded party is content with the recovery of only the amount that he actually lost, his damages will be measured under that rule; (2) if the fraudulent representation also amounts to a warranty, recovery may be had for loss of the bargain, because a fraud accompanied by a broken promise should cost the wrongdoer as much as the latter alone; (3) where the circumstances disclosed by the proof are so vague as to cast virtually no light upon the value of the property had it conformed to the representations, the court will award damages equal only to the loss sustained; and (4) where the damages under the 'benefit of the bargain' rule are proved with sufficient certainty, that rule will be employed. . . ."

See also *Selman v. Shirley* 85 P.2d 384,393 (Or. 1938) from which the rule was derived and also Prosser, *Torts* § 105; *Damages* p. 752 (3rd edition).

This rule allows Plaintiff to choose his measure of damages between the out-of-pocket or benefit of the bargain theory provided under the latter they are proven with requisite certainty. See *Vise v. Foster,* 247

**79**

S.W.2d 274, 281 (Tex. Civ. App. 1982) The out-of-pocket rule "allows the person defrauded to recover the difference between the value of what the Plaintiff has parted with and the value of what the Plaintiff received in the transaction." The benefit of the bargain rule "allows recovery of the difference between the actual value of what the Plaintiff received and the value which it would have had if it had been as represented" McCormick, *Damages* § 121.

In determining the benefit of the bargain the court must determine the value of the item had it been as represented and its actual value. The purchase price is at least some evidence of the former. See *Fox v. Wilson* 507 P.2d 252, 267 (Kan. 1973). The actual value is ordinarily for the experts to determine. See generally Annotation 13 ALR 3d 881, *Damages-Fraudulent Representation* § 3.

In order to award damages under the benefit of bargain rule a higher standard of proof must be met. "The standard for the degree of certainty requires that the mind of a prudent impartial person be satisfied with the damages." See *F.A. Conner v. Atlas Aircraft Corp.*, 310 So.2d 352,54 (Fla. 3d DCA 1975). If the circumstances are so vague as to cast virtually no light upon the value of the property had it conformed to the representation, the measure of damages is the out-of-pocket theory.

As to expenses incurred which the buyer claims in addition to the benefit of bargain damages, *DuPuis*, supra, is silent. McCormick, without citing authority says they are not recoverable. See McCormick, supra p. 458 but see Prosser, supra at p. 752 n. 64

In addition to interest on the out-of-pocket damages, buyer seeks pre-judgment interest on his benefit of the bargain damages. According to McCormick, ordinarily pre-judgment interest should be denied on the benefit of the bargain damages because of their uncertainty but should be granted on out-of-pocket damages because the sums are liquidated. See McCormick supra 458-459.

Courts are given great flexibility in awarding damages in cases of this nature. "A given formula is improvidently invoked if it defeats a common sense solution." See *532 Main Street Corp. v. Eagle Roofing Co.*, 168 A.2d 33 (NJ 1961). (Per Weintraub, CJ).

## APPLYING THE LAW TO THE FACTS

Buyer's expert used what he called the reversion theory in determining the actual fair market value of the property on the date of sale. Over seller's objection, his computation took into account the actual duration of the moratorium. When asked of the value with a morato-

rium of unknown duration he said the property would be worth even less, how much less he could not say. There was no testimony as to how long a reasonable person, at the time of purchase, would have expected the moratorium to last nor is it clear such testimony could be reasonably elicited. The failure inures to detriment of the wrongdoer.

The testimony is sufficiently clear for the application of the benefit of the bargain rule. Taking a conservative position, the Court accepts the testimony of the expert and finds the actual fair market value of the property on the date of the sale at $592,000. The price negotiated by parties who are all knowledgeable and experienced business people acting in an arms length transaction sets the value of the property as bargained for i.e. $1 million. The Court finds the buyer's benefit of the bargain damages are $408,000.

The test to determine whether the damages are liquidated is the relative certainty in determining them. Damages for pain and suffering are at one pole, and those for default on a note, at the other. Broadly, damages for breach of contract are liquidated while those in tort are not. Here seller's actions were both tortious and resulted in breach of an express warranty. The unrefused expert testimony is sufficiently clear for the damages to be deemed liquidated. Since the damages are liquidated, buyer is entitled to pre-judgment interest.

Buyer seeks to calculate his 1973 damages in 1984 dollars. Pre-judgment interest is allowed for liquidated damages as compensation to the injured party for the loss of the use of the money from the date of the injury to the date of the judgment. This loss of use roughly reflects inflation. Buyer is seeking a double recovery and accordingly will be held to pre-judgment interest alone.

Buyer seeks compensation for out-of-pocket expenses in maintaining the property during the moratorium. Clearly, those out-of-pocket expenses contemplated by the parties and payable irrespective of the moratorium are not recoverable. These include paying the principal and interest on the first mortgage and real estate taxes. It might be argued that had the property been as represented, he would not have had to hold the property beyond 1975, accordingly taxes and interest payments thereafter should not be recoverable. This ignores the 1974-1975 recession which might have required holding the property for several years thereafter.

The District Court allowed this court to apply the mitigation doctrine. The Court specifically foreclosed consideration of a package treatment plant which would have permitted multi-unit apartment construction even with a moratorium. Selling the property with a

moratorium of uncertain duration seems unlikely. The record does not support seller's claim that other kinds of construction were reasonably feasible. The unresolved litigation after the moratorium was lifted may well have made development difficult, if not impossible. The burden to prove mitigation is upon sellers and they have failed to meet that burden.

Damages rules should be applied in a common sense manner, compensating the injured, with least harm to the wrongdoer consistent with fairness. Setting off damages under the benefit of the bargain rule plus pre-judgment interest against the balance due on a note plus interest should vest clear title in the buyer without further substantial investment. His $200,000 will give him the buildable property he bargained for with damages arising from the delay occasioned by the seller's misconduct.

Regarding liability for attorneys fees and costs for this litigation (Cases #75-39659 & 79-6349) the buyer has 20 days from the date of this order to supply the court with a *brief* memorandum of law and the sellers shall have 20 days to respond. No further response from the buyer will be permitted.

Also within 30 days from the date of this order, the buyer and sellers shall calculate the buyer's damages owed by the sellers to the buyer and also the principal and interest due on a note, and costs. Once the court has resolved the issue of liability for attorneys fees and costs, the court will set the matter for further hearing on the amount of fees and costs if they are to be awarded.