```
┌─────────────────────────────────────────────────┐
│          NOT FOR PUBLICATION WITHOUT THE          │
│         APPROVAL OF THE APPELLATE DIVISION         │
│                                                    │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│ Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R.1:36-3.     │
└─────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5620-14T3

JERSEY CENTRAL POWER &
LIGHT COMPANY,

    Plaintiff-Appellant,

v.

HAROLD A. PONTECORVO and
HAPCO FENCE CONTRACTORS, INC.,

    Defendants-Respondents.

_____

Argued March 2, 2017 - Decided June 9, 2017

Before Judges Lihotz and Hoffman.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3553-11.

Mark B. Watson argued the cause for appellant (Daniel F. Sahin, P.C., attorneys; Mr. Watson and Daniel F. Sahin, on the briefs).

Stephen J. Foley, Jr., argued the cause for respondents (Campbell, Foley, Delano & Adams, LLC, attorneys; Mr. Foley, on the brief).

PER CURIAM

Plaintiff, Jersey Central Power & Light Company, appeals from a no cause of action jury verdict in this damages only trial. Plaintiff's complaint sought recovery of the cost to replace a utility pole, which defendant Harold A. Pontecorvo hit, while operating a Jeep owned by his business Hapco Fence Contractors, Inc. The judge informed the jury "the defendant was negligent when he backed into the pole." The jury was to determine whether defendant's negligence proximately caused damage to the pole, which plaintiff replaced, and returned a no cause of action verdict.

On appeal, plaintiff argues the verdict was against the weight of the evidence, asserts the trial judge's evidential decisions were erroneous, and the misleading jury verdict form "placed an erroneous burden of proof upon [plaintiff] to prove something that was not an essential element of its cause of action."

We have considered these arguments in light of the record and applicable law. We affirm.

I.

On the evening of November 15, 2009, defendant, while making a K-turn, backed into a utility pole owned by plaintiff. Defendant left the scene and returned to his nearby home without reporting the collision.

An anonymous caller notified the Red Bank Police Department, and Officer George Trevostio responded to the scene. He observed the pole and believed the damage was "serious enough" for the police department to contact plaintiff "to evaluate the damage to the pole." Officer Trevostio acknowledged he routinely patrolled the area and had not previously noticed damage to this pole, but admitted on cross-examination he could not specifically recall the condition of the pole prior to the collision.

Officer Trevostio identified a photograph of the pole, as depicting the condition he saw on the night of the accident. The same night, he located and inspected defendant's Jeep, stating "[t]he tailgate of the Jeep was dented pretty well, and the rear glass was broken out." Officer Trevostio was on the scene when plaintiff's representatives arrived, shortly after 9:30 p.m., to assess the damage.

Plaintiff's employee, lineman Dillon Urzua, also testified. He and other employees performed work on the junction pole, starting on September 16, 2010. By that date, plaintiff had installed a second pole, latched to the first which was struck by defendant's vehicle, "because the [original] pole [wa]s falling over." Urzua agreed the previously introduced photograph accurately depicted the pole when he first saw it, and stated: "The [old] pole was in a cracked position. There was sheer, like

basically like you could tell it was a car/pole accident, obviously. And the pole was leaning . . . . [T]he bottom part[,] which we call . . . the butt, was cracked. I would say a few feet up."

Urzua stated the old pole "could not be repaired, it had to be replaced. So a new pole had to be installed and the facilities had to get transferred over." He detailed his role in transferring "every wire, one at a time" from the damaged junction pole to the new one, which included scheduling equipment, obtaining material, notifying affected customers of power outages, allowing the telephone carrier to transfer its lines to the new pole, and removing the damaged pole.

On cross-examination, Urzua stated he did not inspect the original pole until ten months after it was struck and did not view the pole's condition "before they latched it" to the new pole. He also responded to questions regarding certain items listed as replaced by plaintiff and certain charges for items Urzua agreed were not used, but which were invoiced to defendant. For example, Urzua stated one "cross-arm" was installed on the new pole, and he had no idea why the invoice defendant was sent stated three were used.

Simone Whittaker, a claims adjuster for plaintiff, next testified. She described her job "recoup[ing] the cost of damages

sustained to [plaintiff]'s facilities." Whittaker identified a claims invoice and replacement cost report generated by plaintiff regarding the pole struck by defendant's vehicle. In replacing the pole, plaintiff billed defendant for $24,768.67, broken down as $19,239.62 for labor; $2,057.18 for equipment use; $2,693.59 for materials and miscellaneous costs; and $778.28 for outside contractors, who performed road flagging services.

On cross-examination, Whittaker admitted she did not check the accuracy of the charges for labor or equipment, but relied on the computer program to record and add the items accurately. She also could not explain why the invoice listed three-cross arms. Further, she was unaware of photographs taken of the pole on the night of the accident or before the second pole was erected. Finally, in checking prior incidents regarding damage to this pole, Whittaker only checked reported damage during the six-month period before defendant's accident.

Defendant testified in his own defense. He lived close by and was very familiar with the junction pole's location. Describing the incident, he stated the streetlight was out, and he did not see the junction pole as he backed the Jeep. Defendant noted, "[T]he way the pole was situated, the way it was close to the curb, the windshield wiper mechanism on the back glass actually

had come in contact with the pole which caused the window glass to shatter, and then dented the hatch."

Defendant also described the pole's condition prior to the accident. Noting "[i]t was an older pole," he stated he always looked at it, remarking "it was almost leaning over at the top. And I said, man, if they put any more stuff on that pole, it's going to break right off." To him there was no change in the pole before and after the accident. "In the days after the accident," defendant looked at the pole in "the daylight," stating it looked the "[s]ame as it always did[,]" a condition he suggested existed for "five, ten years."

At the close of evidence, the parties cross-moved for judgment. The court denied both motions because conflicting evidence regarding proximate cause and damages was introduced. Following summations, the final jury charge and verdict sheet was issued. The jury submitted two questions. The judge responded to the questions and the no cause verdict was returned less than eight minutes later.

Plaintiff moved for judgment notwithstanding the verdict or a new trial. Following argument, the motions were denied. This appeal followed.

II.

A-5620-14T3

Plaintiff argues its proofs "unequivocally proved damages and proximate cause," therefore the judge erroneously denied it motion for judgment. We disagree.

This court reviews a trial judge's decision regarding a motion for directed verdict, R. 4:40-1, or a motion for judgment notwithstanding the verdict, R. 4:40-2, guided by "the same standard that governs the trial courts." Fruqis v. Braciqliano, 177 N.J. 250, 269 (2003). We accept as true all evidence presented by the non-moving party, along with the legitimate inferences drawn from those facts, then determine whether the proofs were sufficient to sustain a judgment in favor of the moving party. Monaco v. Hartz Mountain Corp., 178 N.J. 401, 413 (2004). "[T]he judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

Plaintiff's burden to prove negligence requires proof "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." Fernandes v. DAR Dev. Corp., 222 N.J. 390, 403-04 (2015). Here, the first two elements were stipulated and the trial evidence focused on the last two.

"Traditionally, proximate cause has been defined 'as being any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Conklin v. Hannoch Weisman, 145 N.J. 395, 418 (1996) (quoting Fernandez v. Baruch, 96 N.J. Super. 125, 140 (1967), rev'd on other grounds, 52 N.J. 127 (1968)). Damages must be those attributed to the negligent act.

On damages, plaintiff recites "the sundry rules for measuring damages are subordinate to the ultimate aim of making good the injury done or loss suffered and hence '[t]he answer rests in good sense rather than in a mechanical application of a single formula.'" N.J. Power & Light Co. v. Mabee, 41 N.J. 439, 441 (1964) (quoting 525 Main St. Corp. v. Eagle Roofing Co., 34 N.J. 251, 255 (1961)). Relying on Mabee, plaintiff suggests replacement cost was an appropriate measure of damages. See Id. at 442 (permitting evidence of replacement cost of a damaged utility pole after rejecting the defendant's argument that depreciation was necessary to reduce any damage award).

The issue here is not whether proof of replacement cost was appropriate or even whether plaintiff's evidence established this measure. The issue was whether the junction pole was so damaged by defendant's negligence to require replacement. Although

Officer Trevostio testified his investigation suggested the damage was "serious enough" for plaintiff to be called, and records showed plaintiff's employees were at the scene that night and the next day. Plaintiff provided neither direct testimony nor documents establishing the pole needed replacement as a result of defendant's accident. Defendant refuted this circumstantial evidence and the necessity of replacing the pole. Defendant's position the pole's condition remained unchanged from that existing before the accident was presented through cross-examination, demonstrating the accident did not disrupt utility service, and plaintiff's trial witnesses had no knowledge of the pole's condition until ten months after the accident. Further, defendant challenged the accuracy of the invoice claimed to capture plaintiff's damages.

During the motion for a new trial, plaintiff's evidence was assessed by the trial judge, who correctly determined credibility was at issue, and other material factual disputes existed for the jury to decide. See Alves v. Rosenberg, 400 N.J. Super. 553, 566 (App. Div. 2008). Because reasonable minds could differ, plaintiff's motion was properly denied. Dolson, supra, 55 N.J. at 5-6.

In a related argument, plaintiff asserts the jury's verdict was against the weight of the evidence and its post-trial motion for a new trial was erroneously denied. We disagree.

A trial judge's decision regarding a motion for a new trial, must remain mindful of the substantial deference accorded a jury verdict. Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011). Trial judges must refrain from substituting their own conclusions for that of the jury "merely because he [or she] would have reached the opposite conclusion . . . ." Ibid. (quoting Dolson, supra, 55 N.J. at 6). The verdict "should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice." Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977). Accordingly, "a motion for a new trial should be granted only after 'having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law.'" Risko, supra, 206 N.J. at 521 (quoting R. 4:49-1(a)).

Our review of these decisions is guided by a similar standard. R. 2:10-1 (requiring "a miscarriage of justice under the law" for reversal of order regarding a motion for a new trial).

> A "miscarriage of justice" has been described as a "'pervading sense of "wrongness" needed to justify [an] appellate or trial judge undoing of a jury verdict . . . [which] can arise . . . from [the] manifest lack of

> inherently credible evidence to support the finding, obvious overlooking or under-valuation of crucial evidence, [or] a clearly unjust result. . . .'"
>
> [Risko, supra, 206 N.J. at 521 (quoting Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996)).]

As demonstrated by the previous discussion, competing evidence was presented on the issues in dispute from which the jury could conclude plaintiff did not prove (1) defendant's negligence solely caused the damage requiring the pole's replacement; or (2) if limited damage was caused by defendant's Jeep, the extent and nature of the damage suffered. In this light, the jury could rely on defendant's testimony the pole was unchanged after he backed his vehicle into it or that the pole's age and prior condition, as well as later wear and tear after the accident, necessitated its replacement. We reject the notion this verdict is a miscarriage of justice, R. 2:10-1, and we conclude plaintiff's motion for a new trial was properly denied.

Next, plaintiff challenges the verdict sheet submitted to the jury. We provide the following facts to add context.

During the charge conference, plaintiff requested a charge instructing:

> New Jersey permits a public utility to recover for the cost it expends to replace a pole that was damaged by a third party through its own negligence regardless of the age or condition

11

A-5620-14T3

> of the pole prior to the accident. Since the previous motion for summary judgment has established liability, you must not consider any testimony regarding the condition or age of the pole prior to the date of the accident.

See Mabee, supra, 41 N.J. at 442 (concluding the condition and age of the pole prior to the date of the collision were not relevant when computing the cost of replacement). The judge declined plaintiff's request concluding, unlike Mabee, in this case "there are substantial fact questions as to the actual damages to the pole" and "there is no presumption of replacement of the pole."

The verdict sheet was also discussed. The form asked the jury to answer three questions: (1) "Has plaintiff proven by a preponderance of the evidence that [defendant's] negligence was a proximate cause of damage to its utility pole?"; (2) "Has plaintiff proven by a preponderance of the evidence that its pole was damaged to such an extent that it required replacement?"; and (3) "What amount of money will fairly and reasonably compensate plaintiff for any damages to its utility pole caused by the accident of November 15, 2009?"

The judge then advised the parties of the charge he intended to issue. There was no objection. Because plaintiff did not object to the language used on the verdict sheet, our review is narrowed, and we consider whether the questions presented satisfied the plain error standard of R. 2:10-2. See also R.

1:7-2. We must determine whether the error "of such a nature as to have been clearly capable of producing an unjust result." Ibid. We conclude it did not.

"[T]he judge has the ultimate responsibility for insuring the correctness of the verdict sheet." Benson v. Brown, 276 N.J. Super. 553, 565 (App. Div. 1994). "[I]nterrogatories to a jury are not grounds for reversal unless they were misleading, confusing, or ambiguous." Sons of Thunder v. Borden, Inc., 148 N.J. 396, 418 (1997). Accordingly, when "reviewing an interrogatory for reversible error, [this court] should consider it in the context of the charge as a whole[,]" because an "accurate and thorough jury charge often can cure the potential for confusion that may be present in an interrogatory." Ponzo v. Pelle, 166 N.J. 481, 491 (2001) (citing Sons of Thunder, supra, 148 N.J. at 415-

20). Therefore, we will not disturb the jury's verdict based on a trial judge's instructional error "where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect." Fischer v. Canario, 143 N.J. 235, 254 (1996). The same standard applies when evaluating the adequacy of a jury's interrogatories or verdict sheet. Mogull v. CB Commercial Real Estate Grp., Inc., 162 N.J. 449, 467-68 (2000).

13

Plaintiff's argument focuses on the second jury question regarding proof of the need to replace the pole. Plaintiff suggests the question inaccurately enhanced the burden of proof and misled the jury. Plaintiff points to the deliberation questions, as support for its assertion "the jury was erroneously hung up on this notion of proving replacement in order to demonstrate [the pole] was damaged."

Throughout trial, plaintiff's presentation sought the cost to replace the pole as its measure of damages. The judge's instruction to the jury was consistent with this position. The trial judge explained:

> The plaintiff here alleges that it was required to replace its utility pole and the equipment pertinent thereto as a result of the defendant's negligence. Plaintiff therefore seeks all of the costs associated with replacement of the pole, and its equipment. In order to recover such costs, plaintiff must prove by a preponderance of the credible evidence that its pole was damaged in the accident, and such damage necessitated the replacement of the pole and its equipment. If the plaintiff fails to prove either that the pole was damaged, or that it was damaged to such an extent that replacement was required, your verdict must be for the defendant.

There was no evidence or argument offered by plaintiff suggesting otherwise.

Once the charge was issued, the judge asked whether "[e]ither [c]ounsel wish[ed] to be heard," or whether either had "any

exceptions?" Plaintiff's counsel said, "Nothing, Your Honor." The absence of an objection suggests no perceived error or prejudice was present. Bradford v. Kupper Assocs., 283 N.J. Super. 556, 573—74 (App. Div. 1995). Now on appeal, after an adverse verdict was rendered, plaintiff changes its position.

"The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error." Brett v. Great Am. Rec., 144 N.J. 479, 503 (1996). "[W]here error was advanced to secure a tactical advantage at trial, the party responsible will not be permitted to complain on appeal." Ibid.

Following our examination of the record as a whole, we decline to entertain plaintiff's change of heart as a basis for reversal. We do not agree the record reflects "a miscarriage of justice under the law," R. 2:10-1, requiring a new trial.

Finally, we conclude plaintiff's remaining arguments lack sufficient merit to warrant extensive discussion in our opinion. R. 2:11-3(e)(1)(E). We provide these brief comments.

Plaintiff asserts the judge should have permitted questioning regarding defendant's lack of automobile insurance, which plaintiff believes affects his credibility and motive to leave the scene of the accident. These arguments are undercut because

liability was not an issue. Moreover, the trial judge properly considered the relevance of the evidence, see N.J.R.E. 411,[1] and "whether its probative value was substantially outweighed by its prejudicial nature." Wenz v. Allstate Ins. Co., 316 N.J. Super. 570, 574 (App. Div. 1998) ("[A]s a general rule, the probative value of information regarding whether a person is insured or not is substantially outweighed by the potential for undue prejudice." (quoting Krohn v. N.J. Full Ins. Underwriters Assoc., 316 N.J. Super. 477, 481-82 (App. Div. 1998), certif. denied, 158 N.J. 74 (1999)).

Finally, plaintiff alleges the trial judge should have precluded defendant from testifying about the condition of the pole prior to the accident. A preliminary question in any evidence inquiry is whether the evidence is relevant. The trial judge concluded defendant could relate his observations. N.J.R.E. 602. A lay witness's "testimony in the form of opinions or inferences

---

[1] N.J.R.E. 411 provides:

> Evidence that a person was or was not insured against liability is not admissible on the issue of that person's negligence or other wrongful conduct. Subject to Rule 403, this rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, control, bias, or prejudice of a witness.

may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701.  The judge did not abuse his discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION