945 A.2d 49 (2008)
399 N.J. Super. 470
Marie ROMANO, Plaintiff-Appellant,
v.
GALAXY TOYOTA a/k/a Monmouth Toyota, M.T. Imports, Inc., Galina Caporellie and Daniel Caporellie, Defendants-Respondents, and
Toyota Financial Services, Defendant, and
Galaxy Toyota a/k/a Monmouth Toyota, M.T. Imports, Inc., Third-Party Plaintiff/ Cross-Appellant/Cross-Respondent,
v.
Daniel Caporellie, Third-Party Defendant/ Cross-Respondent/Cross-Appellant, and
Galina Caporellie Poss, Third-Party *50 Defendant/Cross-Respondent.
Docket No. A-0251-06T3.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 2007.[1]
Decided March 28, 2008.
*51 Ronald L. Lueddeke, Spring Lake, argued the cause for appellant (Lueddeke Law Firm, attorneys; Mr. Lueddeke, on the brief).
Resa T. Drasin argued the cause for respondent/cross-appellant/cross-respondent Galaxy Toyota (Woehling & Freeman, LLP, attorneys; Ms. Drasin, of counsel and on the brief).
*52 Edward L. Larsen, attorney for respondent/ cross-respondent/cross-appellant Daniel Caporellie.
Respondent Galina Caporellie Poss has not filed a brief.
Before Judges LISA, LIHOTZ and SIMONELLI.
The opinion of the court was delivered by LIHOTZ, J.A.D.
In this consumer fraud case, we review the appropriate measure of damages when a purchaser revokes acceptance of an automobile whose odometer has been rolled back. At trial, plaintiff urged and the jury found that her ascertainable loss for the purpose of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -166, was the purchase price paid for the vehicle. On defendant's motion, the trial court set aside the jury verdict, concluding that although a CFA violation was stipulated, plaintiff failed to establish damages measured by the difference between the vehicle's purchase price and its diminished value as a result of the altered odometer. The trial court also reduced the attorney's fees and costs claimed by plaintiffs counsel. Plaintiff appeals from those determinations.
Defendant, Galaxy Toyota, filed a defensive cross-appeal requesting review if, as a result of plaintiff's appeal, the jury's CFA verdict is reinstated or counsel fees increased. Finally, defendant Daniel Caporellie cross-appealed against Galaxy from the denial of his motion for a new trial and his motion to offset the damage award against him by the value of the car. We affirm the trial court's decision in all respects.

I
We look to the statement of facts set forth in the trial court's written opinion issued to determine the parties' posttrial motions, which the parties have essentially accepted. Plaintiff Marie Romano purchased a 1999 Infiniti I-30 from M.T. Imports, Inc. d/b/a Galaxy Toyota (Galaxy), for $18,690. She financed the vehicle through Toyota Motor Credit Corporation. The odometer disclosure statement listed the vehicle's mileage as 42,305 miles. Two years later, the engine light activated. Romano took the vehicle to a Ray Catena dealership for service. A mechanic determined that as of April 11, 2002, the vehicle's odometer had recorded 68,674 miles. Romano concluded that the odometer had been "rolled back" approximately 26,369 miles prior to her purchase. Romano notified Galaxy. The two were unable to reach an acceptable resolution because Galaxy refused to refund Romano's purchase price. Romano retained possession of the vehicle and continued to make monthly payments of $295.14 on the loan obtained to finance the purchase. At this time, she continues to possess the automobile and likely, has satisfied the loan obligation.
Romano filed suit against Galaxy alleging violations of the CFA, the Federal Odometer Law (FOL), 49 U.S.C.A. § 32701 to § 32711, equitable fraud, and rescission of acceptance under the Uniform Commercial Code (UCC), N.J.S.A. 12A:2-608(1). Galaxy filed a third-party complaint against the vehicle's original owners, Daniel Caporellie and Galina Caporellie Poss, for contribution, indemnity, violation of the FOL, fraud, equitable fraud and breach of contract. Romano filed direct claims against Caporellie and Poss for violations of the FOL and fraud.
Following trial, the determination of the various claims was submitted to a jury *53 through a detailed sixteen-page jury questionnaire. The jury found: (1) Galaxy proximately caused Romano's loss of $22,586, less a $9,360 set-off amount based on Romano's continued use of the car; (2) Galaxy was liable to Romano for equitable fraud, but no damage amount was specified; (3) Caporellie and Poss tampered with the odometer, but had no direct liability to Romano under the FOL; they each were liable to Galaxy pursuant to the FOL with resultant damages of $5,113; (4) Caporellie and Poss each were liable to Romano for fraud causing actual damages of $1,975; (5) Caporellie and Poss each were liable to Galaxy for legal fraud with resultant damages of $1,500; and (6) Poss was liable to Galaxy for equitable fraud, with no damages specified, and for breach of contract because she misrepresented the vehicle's mileage, resulting in Galaxy's loss of $1,000. Addressing the UCC claims, the jury determined that the non-conformity of the vehicle substantially impaired its value to Romano, Romano had revoked her acceptance within a reasonable time, she had notified Galaxy of her revocation, and revocation occurred before any substantial change in the condition of the vehicle. Therefore, Romano's continued use of the vehicle was found to be reasonable, and the value of use was fixed at $9,360.
All parties filed post-trial motions. Relevant to this appeal, Romano argued that the UCC rescission remedies, which included recovery of the purchase price of the vehicle, should be applied to her CFA claim resulting in treble damages based on the purchase price of the car. Alternatively, Romano suggested that the jury's finding of Galaxy's liability for equitable fraud allows rescission, permitting her to cancel the contract and obtain a full refund of the purchase price. She also argued the CFA damages were cumulative.
Galaxy sought judgment notwithstanding the verdict as to the CFA claim or alternatively, a new trial, and limitation of any attorney's fee awarded, suggesting counsel's claimed rate of $375 per hour was unreasonably high and the case was "a slam dunk." Galaxy also requested that its FOL damages against Caporellie and Poss include treble damages, attorney's fees and costs. Galaxy also sought additur of the legal fraud damages to match what it must pay Romano. Caporellie requested a new trial.
The trial judge found Romano failed to prove an "ascertainable loss" and denied her request for treble damages under the CFA. Additionally, he remitted plaintiff's attorney's fees and costs under the CFA to $26,102.95. The trial judge fixed Romano's UCC rescission damages as the vehicle's purchase price less the value of the post-revocation retention and ordered Romano to return the vehicle to Galaxy within forty-five days. Galaxy's request for a new trial was denied. Galaxy's damages against Caporellie and Poss under the FOL were affirmed but remitted to $1,500, along with attorney's fee and cost of suit in the amount of $32,764.09. Alternatively, Galaxy could recover fraud damages of $1,500 (without attorney's fees and cost of suit) and receive a punitive damage amount to be determined at a subsequent proceeding, pursuant to N.J.S.A. 2A: 15-59. Caporellie's motions were denied.

II
Prior to our analysis of the issues raised on appeal, we state the propositions governing our review. Our judicial framework accepts that there is a presumption of correctness in jury verdicts. Baxter v. Fairmont Food Co., 74 N.J. 588, 598, 379 A.2d 225 (1977). A trial judge may not substitute his judgment for that of the jury merely because he would have reached a *54 different conclusion. Dolson v. Anastasia, 55 N.J. 2, 6, 258 A.2d 706 (1969).
When reviewing a motion for a new trial, the trial judge shall correct only clear errors or mistakes of the jury, when "it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a); Johnson v. Scaccetti 192 N.J. 256, 280, 927 A.2d 1269 (2007); Caldwell v. Haynes, 136 N.J. 422, 431, 643 A.2d 564 (1994); Baxter, supra, 74 N.J. at 596, 379 A.2d 225. Additionally, "a trial judge should not interfere with the quantum of damages assessed by a jury unless it is so disproportionate to the injury . . . as to shock the conscience and to convince him that to sustain the award would be manifestly unjust." Ibid.; Correa v. Maggiore, 196 N.J.Super. 273, 283, 482 A.2d 192 (App.Div.1984). In assessing whether a quantum of damages is excessive or inadequate, a trial court must consider the evidence in a light most favorable to the prevailing party in the verdict. Caldwell, supra, 136 N.J. at 432, 643 A.2d 564.
This court will not reverse a trial judge's determination of whether the jury verdict is against the weight of the evidence "unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1; Caldwell, supra, 136 N.J. at 432, 643 A.2d 564. Therefore, "`[t]he standard for appellate review of a trial court's decision on a motion for a new trial is substantially the same as that controlling the trial court except that due deference should be made to its `feel of the case,' including credibility.'" Ibid. (quoting Feldman v. Lederle Labs., 97 N.J. 429, 463, 479 A.2d 374 (1984)); Johnson, supra, 192 N.J. at 282, 927 A.2d 1269. Beyond these "intangibles," this court is to make its own independent determination of whether a miscarriage of justice occurred. Carrino v. Novotny, 78 N.J. 355, 360-61, 396 A.2d 561 (1979).

III
With the above principles in mind, we commence our discussion with the challenges raised by Romano on appeal. Romano argues her ascertainable loss was the purchase price of the vehicle paid at the time of rescission or $22,586. She maintains the trial court erred by concluding her ascertainable loss for CFA purposes was "limited to a diminution in value measure of damages" rather than the purchase price, and by ordering remittitur of the jury's CFA damage award. Romano asserts that the "contract price can be the measure of damages in a CFA case so long as the fraud took place in the formation of a contract." Because a damage determination turns on the facts of each case, we reject plaintiff's broadly stated legal proposition.
It is clear that to accomplish the CFA's remedial purposes, its provisions have been interpreted broadly. Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 264, 696 A.2d 546 (1997); Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604, 691 A.2d 350 (1997); Leon v. Rite Aid Corp., 340 N.J.Super. 462, 467-68, 774 A.2d 674 (App.Div.2001). Here, Galaxy did not challenge its liability under the CFA. At issue is the measure of damages suffered.
The CFA states in relevant part:
Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, *55 award threefold the damages sustained by any person in interest. In all actions under this section, . . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.
[N.J.S.A. 56:8-19 (emphasis added).]
"The ascertainable loss requirement operates as an integral check upon the balance struck by the CFA between the consuming public and sellers of goods." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 251, 872 A.2d 783 (2005). Although a loss occurs when a consumer receives less than what was promised, Union Ink Co., Inc. v. AT&T Corp., 352 N.J.Super. 617, 646, 801 A.2d 361 (App.Div.2002), there remains a need for plaintiffs to objectively prove that loss. Thiedemann, supra, 183 N.J. at 244, 872 A.2d 783.
Determination of what constitutes an "ascertainable loss" under the CFA, although nebulous, is not novel. In Thiedemann, supra, the Court noted that "[t]o give effect to the legislative language describing the requisite loss for private standing under the CFA, . . . a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." 183 N.J. at 248, 872 A.2d 783. Plaintiffs must suffer "an objectively ascertainable loss or damage," which could be measured by "expert proof of diminution of value" of the plaintiffs' property or "out of pocket expenses causally connected with the claimed defect perpetuated by the defendant." Id. at 244, 872 A.2d 783. "`[A] claim of loss in value must be supported by sufficient evidence to get to the factfinder. To raise a genuine dispute about such a fact, the plaintiff must proffer evidence of loss that is not hypothetical or illusory.'" Perkins v. DaimlerChrysler Corp., 383 N.J.Super. 99, 106, 890 A.2d 997 (App.Div.2006) (quoting Thiedemann, supra, 183 N.J. at 248-49, 872 A.2d 783).
The courts have identified the measure of a consumer's ascertainable loss in various consumer fraud situations. For example, the Supreme Court in Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 10, 860 A.2d 435 (2004), held: "when a merchant violates the [CFA] by delivering defective goods and then refusing to provide conforming goods, a customer's ascertainable loss is the replacement value of those goods." In Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454 (1994), the plaintiffs ascertainable loss regarding the repair of the defendant's shoddy home improvement work included the projected repair costs, but did not include the indebtedness arising out of the initial contract, which was not the basis of the CFA violations.
We concluded in Delaney v. Garden State Auto Park, 318 N.J.Super. 15, 21-22, 722 A.2d 967 (App.Div.), certif. denied, 160 N.J. 477, 734 A.2d 792 (1999), that an auto dealer's wrongful inclusion of charges for pre-delivery services neither disclosed to nor requested by the consumer resulted in damages measured by the actual extra costs charged, along with the increased sales tax paid on the higher vehicle cost, and any interest accruing on the sum because the items were wrongfully included in the financed automobile price. In Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 605, 581 A.2d 91 (App.Div.1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991), we affirmed the trial court's damage instruction and the jury's verdict awarding the plaintiff homeowners an amount of money representing the cost to replace and install new windows with fully insulated glass and frames, along with the cost of removing the unsatisfactory windows.
The Supreme Court specifically has not ruled on the measure of damages in an *56 odometer rollback case, and our opinions in similar matters have not expressly examined the calculated measure of damages. Nevertheless, review of the three opinions by this court is instructive.
In Cogar v. Monmouth Toyota, 331 N.J.Super. 197, 200-02, 751 A.2d 599 (App. Div.2000), the plaintiff purchased a used vehicle represented to have traveled approximately 46,000 miles when, in fact, its odometer had already "turned over" and the car possibly traveled over 145,000 miles. Expert testimony showed the vehicle was unsafe and unusable. Id. at 202, 751 A.2d 599. The jury concluded all named defendants violated the CFA and FOL. Ibid. The issue on appeal, however, addressed whether the FOL damages should be joint and several among the defendants. Id. at 199, 751 A.2d 599. Our decision did not address the computation of the plaintiffs damages as calculated by the trial court.Id. at 208, 751 A.2d 599.
Like the case at hand, Cuesta v. Classic Wheels, 358 N.J.Super. 512, 519, 818 A.2d 448 (App.Div.2003), involved claims for UCC revocation of acceptance and CFA violations as a result of a "clocked" odometer. The defendant represented the automobile's mileage was 59,586 miles, while the plaintiff's expert estimated the mileage to be over 100,000 miles. Id. at 515-16, 818 A.2d 448. When the trial court determined the plaintiff failed to establish an ascertainable loss, it dismissed the plaintiff's CFA complaint. Id. at 517, 818 A.2d 448. On appeal, the plaintiff argued that the proven CFA violation entitled him to damages. Ibid. Our comment relevant to the plaintiff's CFA damages was:
We agree with the trial court that the record lacks any proof of damages based on the difference between the purchase price of the Corvette and the market value of the Corvette with the excess mileage. Despite that deficiency, once the trial court found that defendant's conduct violated the [CFA] because defendant affirmatively misrep-resented the mileage and did so with either actual or constructive knowledge that the mileage was other than as represented, plaintiff was entitled to recover damages under the [CFA].
[Cuesta, supra, 358 N.J.Super. at 519, [818 A.2d 448].]
It is this passage in Cuesta that plaintiff argues allows recovery of damages measured by the purchase price of the altered vehicle. In our opinion, following the above excerpt, we then discussed the plaintiff's UCC remedies. Ibid. We determined that the plaintiff's continued use of the vehicle, after the defendant wrongfully refused the plaintiff's attempt to rescind, did not represent a waiver of damages allowed under the UCC. Ibid. Further, we instructed the trial court to discern whether the plaintiff's continued use of the vehicle was reasonable, and if so, to determine the amount of any offset representing the value of that reasonable use. Id. at 522, 818 A.2d 448. We did not suggest, as urged by plaintiff, that this measure, once discerned, represented the "ascertainable loss" for CFA treble damage recovery. Id. at 523, 818 A.2d 448.
More specifically, we explained that the plaintiff's CFA recovery included "`reasonable attorney's fees, filing fees, and costs if [the] plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages.'" Id. at 523, 818 A.2d 448 (quoting Cox, supra, 138 N.J. at 24, 647 A.2d 454). We then remanded the matter for a new trial on UCC rescission damages. Ibid.
The third case touching on the calculation of damages resulting from an altered odometer is Sema v. Automall 46, Inc., 384 *57 N.J.Super. 145, 149, 894 A.2d 77 (App.Div. 2006). We commented positively on the trial court's damage determination saying:
the trial court correctly stated that the measure of damages is the difference between the price plaintiff paid for the vehicle and the retail value of the vehicle with the excess mileage. See Cuesta [,supra,] 358 N.J.Super. [at] 519, [818 A.2d 448]; see also McConkey v. AON Corp., 354 N.J.Super. 25, 52, 804 A.2d 572 (App.Div.2002) (noting that in fraud cases "[t]he benefit-of-the-bargain rule allows recovery for the difference between the price paid and the value of the property had the representations been true." (emphasis and internal quotation marks omitted)), certif. denied, 175 N.J. 429, 815 A.2d 476 (2003).
[Ibid. (parallel citations omitted).]
The jury found the defendant violated the CFA and the FOL, but "the jury apparently concluded that the price [the] plaintiff paid for the automobile was the fair market value of the vehicle, even with the additional mileage, because the jury determined that [the] plaintiff failed to prove she suffered `an ascertainable loss.'" Id. at 150, 894 A.2d 77. However, the damage calculation methodology was not the issue reviewed on appeal. This court examined the defendant's appeal from the post-verdict orders for counsel fees and costs awarded under the CFA and other unrelated relief. Ibid.
Our review of reported opinions reveals no case supporting plaintiff's proposition that when a fraud occurs at the inception of the contract, a plaintiff's measure of damages in fraud or consumer fraud actions, is the purchase price paid for the product. While this may be the ultimate quantum of damages, it does not reflect an accepted methodology.
In fraud cases, "[compensatory damages are designed `to put the injured party in as good a position as he would have had if performance had been rendered as promised.'" 525 Main St. Corp. v. Eagle Roofing Co., 34 N.J. 251, 254, 168 A.2d 33 (1961) (quoting 5 Corbin, Contracts § 992, p. 5 (1951) and 1 Restatement, Contracts § 329, comment a (1932)). Generally, courts have measured damages by applying two methods. First, the "benefit of the bargain" rule allows recovery for the difference between the price paid and the value of the property had the representations made been true. D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J.Super. 11, 21, 501 A.2d 990 (App.Div.1985); Correa v. Maggiore, 196 N.J.Super. 273, 284, 482 A.2d 192 (App.Div.1984). The second commonly applied damage calculation is the "out of pocket" approach, which provides recovery for the difference between the price paid and the actual value of the property acquired. Ibid. These approaches each seek to make "an injured party whole," Furst, supra, 182 N.J. at 11, 860 A.2d 435, and both methods are designed to fairly and reasonably compensate that injured party for the damages or losses proximately caused by the alleged consumer fraud. "[A] given formula is improvidently invoked if it defeats a common sense solution." 525 Main St. Corp., supra, 34 N.J. at 254, 168 A.2d 33.
Based upon our review of this record, we are satisfied, as was Judge English, that the jury's award to plaintiff of the purchase price paid for the vehicle "goes far beyond what is reasonably necessary to compensate plaintiff for her loss and, thus, constitutes a clear miscarriage of justice." Correa, supra, 196 N.J.Super. at 286, 482 A.2d 192. Other than the initial engine light warning, plaintiff experienced no mechanical problems and expended no funds to obtain necessary repairs of the vehicle. She provided no expert opinions or other evidence to *58 quantify the consequential loss suffered due to the altered odometer. Plaintiff testified that she "loved the car," a fact underscored by her continued possession of the automobile.
The award of damages necessary to make plaintiff whole is that which would compensate her for the "unconscionable commercial practice" by Galaxy, that is, understating the car's mileage at sale. Consequently, the measure of plaintiff's ascertainable loss for CFA purposes cannot be the purchase price she paid for the automobile, but the difference between the vehicle she received and the vehicle as represented at purchase. "[A]lthough damages measured by diminution in value may not be sufficient to place [plaintiff] in the same physical position as would proper performance of the contract, [her] pecuniary status will be substantially as good." Correa, supra, 196 N.J.Super. at 285, 482 A.2d 192. Accordingly, we confirm that the measure of plaintiff's damages is the price paid for the vehicle less its actual value in the undisclosed altered condition.
Plaintiff's election to seek rescission under the UCC allows recovery of the purchase price of the vehicle less a credit for plaintiff's reasonable use. N.J.S.A. 12A:2-608 and N.J.S.A. 12A:2-711(1). As observed by the trial judge, this relief restores plaintiff to the economic position she had prior to the purchase, so that she experiences neither loss nor gain as a result of the transaction. Once plaintiff is restored to her original position, she suffers no loss.
Thus, plaintiff failed to provide proof of an ascertainable loss as required by the CFA. Judge English properly determined her CFA remedies were limited to reasonable attorney's fees and costs. N.J.S.A. 56:8-19 provides that successful plaintiffs shall be awarded reasonable attorney's fees and reasonable costs of suit. Even though plaintiff unsuccessfully proved the existence of an ascertainable loss, and was unable to recover treble damages, plaintiff can recover reasonable attorney's fees and costs because defendant committed an unlawful practice. Cox, supra, 138 N.J. at 24, 647 A.2d 454; Performance Leasing Corp. v. Irwin Lincoln-Mercury, 262 N.J.Super. 23, 33-34, 619 A.2d 1024 (App. Div.), certif. denied, 133 N.J. 443, 627 A.2d 1148 (1993).
As a result of our conclusion, we find no error in the trial court's use of remittitur of the jury's CFA verdict. We provide no further discussion on arguments raised by plaintiff related to this issue. R. 2:11-3(e)(1)(E).
Additionally, we find no misapplication of discretion by Judge English in denying plaintiffs counsel's request for an enhanced fee and reducing plaintiff's counsel's hourly rate when awarding a reasonable fee award as permitted by the CFA. Where "the judge makes appropriate findings of fact, a fee award is accorded substantial deference and will be disturbed only in the clearest case of abuse of discretion." Yueh v. Yueh 329 N.J.Super. 447, 466, 748 A.2d 150 (App.Div.2000); see also Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995). Judge English critically reviewed each applicable factor when making his determination, which we have no basis to disturb. Rendine, supra, 141 N.J. at 335, 661 A.2d 1202.

IV
Our determination obviates discussion on Galaxy's cross-appeal. Caporellie's cross-appeal challenges the trial court's rulings regarding damages he owes Galaxy. Caporellie suggests Galaxy may not recover under the FOL because it was an intermediary dealer and not a buyer pursuant to the Act. We find this argument *59 unavailing. The FOL affords a plaintiff who successfully proved an odometer has been re-set shall be awarded three times actual damages or the sum of $1,500, whichever is greater, plus attorney fees and costs. 49 U.S.C.A. § 32701. Galaxy was the original purchaser from Caporellie following his alteration of the odometer. Galaxy had standing to present an FOL claim and was entitled to recover the $1,500 statutory damages, as properly remitted by Judge English. Ibid.
Caporellie's suggestion that the jury verdict was not properly grounded in the evidence, also is rejected as he presents nothing to contradict the trial court's finding to the contrary. Dolson, supra, 55 N.J. at 6-7, 258 A.2d 706. Finally, after considering Caporellie's remaining contentions, in light of the record, the briefs, and the applicable law, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Judge Lisa did not participate in oral argument. He joins the opinion with counsels' consent. R. 2:13-2(b).