8 A.3d 851 (2009)
417 N.J. Super. 166
Elaine KLEINMAN and Ronald Martin, Plaintiffs,
v.
MERCK & CO., INC., Defendant.
No. L-3954-04/L-24-05
Superior Court of New Jersey, Law Division, Civil Part, Atlantic County.
Argued December 5, 2008.
Decided March 17, 2009.
*855 Thomas M. Sobol argued the cause for plaintiffs Elaine Kleinman and Ronald Martin (Hagens Berman Sobol Shapiro LLP and Spector Roseman Kodroff & Willis, P.C., attorneys; Theodore M. Lieverman, on the brief).
John H. Beisner argued the cause for defendant Merck & Co., Inc. (O'Melveny & Myers LLP and Dechert LLP, attorneys; Diane P. Sullivan, Princeton, on the brief).
HIGBEE, P.J.Cv.
The issue before the court is whether under Rule 4:32-1 this court should grant certification of a national class action or a New Jersey class of individual consumers who purchased Vioxx as a result of deception by the defendant manufacturer of the drug. The complaint is seeking economic damages resulting from the purchase and not personal injury damages.

I. Background
The defendant manufactured and marketed the drug Vioxx from June 1, 1999 to October 1, 2004. Vioxx was approved by the FDA for sale to treat arthritis pain.
The plaintiffs allege the defendant manufacturer was aware of serious cardiovascular ("CV") risks and intentionally failed to disclose these risks during the period that Vioxx was on the market. Plaintiffs have the obtained in discovery internal memoranda, e-mails, and other documents from high level company personnel that they believe demonstrates that defendant was aware of the CV risks as early as 1996, and that defendant manufacturer engaged *856 in a uniform deceptive marketing campaign to hide evidence of the CV risks. In addition, plaintiffs allege that clinical studies conducted by the defendant manufacturer, specifically the VIGOR study, were designed to minimize the evidence of CV risks in order to demonstrate the safety of the drug despite the fact that defendant knew the drug was not safe for consumers and had no efficacy beyond other safer alternatives in the market.
The results of the VIGOR study were published in 2000 in The New England Journal of Medicine. Plaintiffs claim the journal article misrepresented the results of the VIGOR study and the safety of Vioxx, by claiming smaller numbers of heart attacks in persons taking Naproxen versus the larger number who suffered heart attacks on Vioxx were a result of the cardio protective nature of naproxen the comparator drug. Plaintiffs focus on this article and its subsequent republication to the medical community to demonstrate the misrepresentations and omissions made by defendant.
Additionally, plaintiffs allege that defendant manufacturer trained its sales force to avoid answering questions about Vioxx's CV risks, and point to documents ranging from October 1999 to February 2001, which show the intent to mislead or misdirect doctors who inquired about CV risks.
Finally, plaintiffs allege that the direct to consumer advertising campaign further misled consumers because it failed to identify the CV risks. Plaintiffs claim the "common theme" in the advertisements was safety and effectiveness. Plaintiffs argue these advertisements demonstrate the commonality and uniformity of the marketing of Vioxx. Vioxx was heavily advertised to consumers in magazines and in television ads. The defendant manufacturer is alleged to have spent more on marketing the drug than Nike spent marketing its products in the same time frame.
The first representative of the class is Elaine Kleinman, who indicated she used Vioxx at various points over the course of three years. Kleinman took Vioxx at the recommendation of her doctor and she personally admitted at her deposition she did not see any advertising for Vioxx. She stated that Tylenol and Aleve were as effective in relieving her pain. After Vioxx was withdrawn from the market, her doctor recommended Tylenol for her pain. However, her doctor has testified that, if available, he would continue to prescribe Vioxx to his patients.
The second representative of the class is Ronald Martin, who indicated he took Vioxx intermittently between 1999 and July 2004. He testified that Vioxx did not relieve his back pain, and he continued to take hydrocodone at the same time for his back pain. At other times, he took Vioxx for pains related to surgery or other illnesses. Martin did see advertisements for Vioxx and did ask his physician for a prescription for Vioxx. Martin has also used Bextra, Celebrex, and prescription strength ibuprofen for his pain.
Plaintiffs propose the following class definition:
All individual consumers in the United States (other than consumers in California) who from June 1, 1999 to October 1, 2004, inclusive paid some or all of the purchase price for the prescription drug Vioxx, manufactured by defendant Merck & Co., Inc. "Individual consumers" means those individual end-users who paid for all or any part of a prescription of Vioxx and does not include third-party payors. Excluded from the Class are (i) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, *857 predecessors, successors, assigns, and employees, and (ii) the judge and staff to whom this case is assigned, and any member of the judge's immediate family.
Although the class proposed is nationwide, plaintiffs would exclude California because of a pending class action certification there. Plaintiffs seek to apply New Jersey substantive law to the class. However, if the court declines to apply New Jersey law to a nationwide class, plaintiffs propose a class of only New Jersey consumers. Plaintiffs allege that a trial can focus on the decision to develop Vioxx, the knowledge of the CV dangers, and the sales and marketing scheme that relied on common misrepresentations and omissions which was used across the country. Plaintiffs seek to have a jury determine liability based on these common facts and to assess the amount of aggregate liability. Plaintiffs request the individual damages portion of the trial be conducted by a master appointed by the court. A special master would approve individual claims under a calculation formulated by plaintiffs experts and approved by the jury. The plaintiffs in this motion request a grant of class action certification.
The defendant manufacturer asserts three reasons for the denial of the motion: (1) a governmental interest analysis points to substantive issues with the law of the other fifty states, which render the class unmanageable; (2) even if a New Jersey-only class is certified, there is no way to resolve claims based on common factual proof because an overwhelming number of individual factual proofs would be required; and (3) a class action is not a superior mechanism for resolving claims. Defendant focuses on the challenges of applying New Jersey law to the entire class as a primary reason for the denial, but argues that even the alternative New Jersey-only class cannot be granted because of the highly individualized circumstances in which plaintiffs were prescribed Vioxx. Defendant points to the fact that each potential class member took the drug for a different reason, paid a different amount for the drugs, and would have made different decisions about continuing to take the drug had the CV risk information been revealed earlier. Defendant argues these individualized issues present themselves in the histories of the class representatives themselves, making their claims not typical of the potential plaintiffs claims. Further, defendant argues that the theory of ascertainable loss and causation forwarded by the plaintiffs is identical to the fraud on the market theory rejected as inapplicable to the Consumer Fraud Act, N.J.S.A. 56:8-1 to -184, in International Union of Operating Engineers Local 68 Welfare Fund v. Merck & Co. (Local 68), 192 N.J. 372, 929 A.2d 1076 (2007). Defendant also asserts a class action is not a superior mechanism of adjudicating these claims because of the settlement already reached in Vioxx litigation.

II. Standards for Certification
Rule 4:32-1 governs the certification of a class action in New Jersey. The rule must be liberally construed, particularly in cases involving consumer fraud. In re Cadillac V8-6-4, 93 N.J. 412, 435, 461 A.2d 736 (1983). A request for class action certification should be granted "`unless there is a clear showing that it is inappropriate or improper.'" Delgozzo v. Kenny, 266 N.J.Super. 169, 180, 628 A.2d 1080 (App.Div.1993) (quoting Lusky v. Capasso Bros., 118 N.J.Super. 369, 373, 287 A.2d 736 (App.Div.1972)).
Despite this deference, a trial court must undertake a "`rigorous analysis'" to determine if the requirements of the rule are met. Carroll v. Cellco Partnership, *858 313 N.J.Super. 488, 495, 713 A.2d 509 (App.Div.1998) (citation omitted). "Although class certification may not be denied based on the factual merits of a complaint, some preliminary analysis of the legal theory on which the action is based is required." Fink v. Ricoh Corp., 365 NJ.Super. 520, 538, 839 A.2d 942 (Law Div.2003) (emphasis added); accord Delgozzo, supra, 266 N.J.Super. at 180-81, 628 A.2d 1080 (stating a court must not "make a preliminary determination of the merits of the underlying claims"). "`The court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations.'" Delgozzo, supra, 266 N.J.Super. at 181, 628 A.2d 1080 (quoting Blackie v. Barrack, 524 F.2d 891, 901 n. 7 (9th Cir. 1975), certif. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976)). The legal analysis undertaken by the court must extend "beyond the pleadings," in that "`a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issue.'" Carroll, supra, 313 N.J.Super. at 495, 713 A.2d 509 (quoting Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir.1996)).
There are several prerequisites to maintaining a class action. Part (a) of Rule 4:32-1 (a) states that a class action can be maintained only if:
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
In addition, one of the requirements of part (b) of the rule must also be met. Plaintiffs submit that they satisfy the conditions of part (b)(3), which specifically requires the court to find that:
the questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include:
(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability in concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.
R. 4:32-1(b)(3).]
Plaintiffs assert that all of the requirements of Rule 4:32-1 have been established. The numerosity requirement specifically requires the class to be so numerous that joinder would be impracticable. R. 4:32-1(a)(1). Defendant does not challenge the numerosity requirement. The numbers of the class are unknown, but are estimated to be around twenty million people in the United States. Certainly, this is a sufficiently large number to satisfy the requirement.
The court recognizes the existence of common questions of law or fact, as required by Rule 4:32-1(a)(2). Multiple common questions exist, including whether defendant disseminated false or misleading statements related to the safety of Vioxx, whether defendant knowingly omitted material information related to the safety and efficacy of the drug, and whether defendant's *859 representations and conduct had the capacity to mislead consumers about the safety of Vioxx. Defendant does not challenge the existence of these common questions of law or fact.
Defendant does vigorously challenge the predominance, typicality, and superiority requirements. The court addresses these issues in turn below.

i. Predominance
Questions of law or fact common to the members of the class must predominate over any questions affecting individual members. R. 4:32-1(b)(3). In this matter, defendant asserts that individualized issues overwhelm the existence of any common issues. Specifically, defendant notes the varying reasons for the prescription of Vioxx, the differing amounts paid for the drug, and the different prescription decisions that patients and doctors may have made if more risk information was revealed.
Plaintiffs bear the burden of establishing that the predominance requirements are met. In re Cadillac, supra, 93 N.J. at 426, 461 A.2d 736. The predominance inquiry focuses on "whether the proposed class is `sufficiently cohesive to warrant adjudication by representation.'" Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 108, 922 A.2d 710 (2007) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689, 708-09 (1997)). The Iliadis Court further enumerated the requirements for a finding of predominance.
First, the number and, more important, the significance of common questions must be considered. Second, a court must decide whether the benefit from the determination in a class action [of common questions] outweighs the problems of individual actions. Third, predominance requires, at a minimum, `a common nucleus of operative facts.'
Notably, predominance does not require the absence of individual issues or that the common issues dispose of the entire dispute. Individual questions of law or fact may remain following resolution of the common questions. Predominance does not require that all issues be identical among class members or that each class member be affected in precisely the same manner.
[Id. at 108-09, 922 A.2d 710 (emphasis added) (citations omitted).]
Individualized questions, therefore, do not alone require rejection of a class certification request. However, the benefit of a class action must outweigh the problems of an unmanageable amount of mini-trials that may result after a uniform determination of common questions, such as liability. Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598, 602 (5th Cir. 2006).
In assessing predominance, the New Jersey Supreme Court requires "an evaluation of the legal issues and the proof needed to establish them," and "a close analysis of the facts and law [rather] than by recourse to reported decisions." In re Cadillac, supra, 93 N.J. at 430, 435, 461 A.2d 736. Assuming the court adopts plaintiffs' argument that New Jersey law should apply to a nationwide class, the court must examine whether common facts predominate under the requirements set forth in Iliadis.

a. Consumer Fraud Act
The CFA makes unlawful:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact *860 with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise ..., whether or not any person has in fact been misled, deceived or damaged thereby....

N.J.S.A. 56:8-2.]
It allows "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act ... [to] bring an action." N.J.S.A. 56:8-19.
To state a CFA claim, a plaintiff must therefore allege "three elements: (1) unlawful conduct ...; (2) an ascertainable loss ...; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs ascertainable loss." N.J. Citizen Action v. Schering-Plough Corp., 367 N.J.Super. 8, 12, 842 A.2d 174 (App. Div.), certif. denied., 178 N.J. 249, 837 A.2d 1092 (2003). The first requirement, unlawful conduct, can be grouped "into three ... categories: affirmative acts, knowing omissions, and regulatory violations." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17, 647 A.2d 454 (1994). "A practice can be unlawful even if no person was in fact mislead or deceived thereby." Ibid It is only the "capacity to mislead" that is significant. Ibid. Additionally, when "the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Id at 17-18, 647 A. 2d 454. However, if the consumer fraud alleged is an affirmative act, intent is not required. Id. at 18, 647 A.2d 454.
To establish unlawful conduct, plaintiffs allege that defendant "engaged in a uniform campaign of misrepresentation and omissions that violated the Consumer Fraud Act and was common to all individual consumers." Specifically, plaintiffs allege that defendant knew of the risks of Vioxx and that Vioxx was not superior to other NSAIDs (non-steroidal anti-inflammatory drugs) already on the market, but "devised and carried out an elaborate marketing campaign to misrepresent or conceal these facts...." The court accepts for purposes of this decision that plaintiffs would indeed be able to produce evidence that defendant knew of the risks of Vioxx at the time of the product launch, that defendant intended to omit or to misrepresent these facts, and over time continued to misrepresent the risks so that plaintiffs can establish unlawful conduct. Defendant argues, however, that this showing cannot be made on a uniform basis. Defendant asserts that its knowledge of Vioxx changed over the period in question. Defendant specifically points to the VIGOR study, which was not completed till after 1999, and asserts it could not warn patients of the results of that study prior to its completion. However, plaintiffs present evidence that directly contradicts this pointspecifically, that defendant had internal knowledge long before VIGOR was completed of the risks and effects of Vioxx, and uniformly withheld this knowledge over the period in question. Accordingly, this is not a reason to deny class certification.
Defendant also argues that its representations changed over the period in question. Plaintiffs respond that the slight variations in representations made over the course of the period would not change the common issues presented, and the effects would not vary among the class members. In the Local 68 opinion, this court found that any variations in marketing did not render the misrepresentations inconsistent. Int'l Union of Operating Eng'rs Local 68 Welfare Fund v. Merck & Co., L-3015-03 (Law Div. Nov. 8, 2004) *861 (slip op. at 13). The opinion of this court is unchanged. There may have been slight changes to the marketing and representations made over the course of the class period, but these changes do not render the class uncertifiable. The court should be "willing to look past minor variations among a defendant's misrepresentations, particularly with respect to a centrally-orchestrated fraudulent scheme, where `[t]he center of gravity of the fraud transcends the specific details of [the] ... communications.'" In re Neurontin Mktg. & Sale Practices Litig., 244 F.R.D. 89, 109 (D.Mass.2007) (quoting In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 140 F.R.D. 425, 431 (D.Ariz.1992)). In this instance, plaintiffs assert they can prove that the misrepresentations made by defendant were indeed centrally orchestrated. That is, that the omission in questionthe CV riskswere consistent over the relevant period and part of a continuing fraud. Whether defendant's conduct fell under the title of consumer fraud is a common question that could be resolved in a class action.
Ascertainable loss is the second requirement of the CFA. An ascertainable loss occurs when the plaintiffs receive "something less than, and different from, what they reasonably expected in view of defendant's presentations." Miller v. Am. Family Publishers, 284 N.J.Super. 67, 90-91, 663 A.2d 643 (Ch.Div.1995). Ascertainable loss requires "a private plaintiff [to] produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248, 872 A.2d 783 (2005). A loss can be demonstrated by expert proof of a loss in value or "out of pocket expenses." Romano v. Galaxy Toyota, 399 NJ.Super. 470, 479, 945 A.2d 49 (App.Div.2008). The evidence must not be hypothetical or illusory; rather, it must be quantifiable or measurable. Thiedemann, supra, 183 NJ. at 248, 872 A.2d 783. However, the precise amount of damages need not be known as long as the damages are measurable. Talalai v. Cooper Tire & Rubber Co., 360 N.J.Super. 547, 564, 823 A.2d 888 (Law Div.2001).
In addition to ascertainable loss, the plaintiffs must also make a showing of a causal nexus between the loss itself and the unlawful conduct. Gross v. Johnson & Johnson, 303 N.J.Super. 336, 345, 696 A.2d 793 (Law Div.1997). A causal nexus is not reliance, as required by common law fraud. Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J.Super. 31, 48, 752 A.2d 807 (App.Div.2000). If the harm suffered was not the result of the defendant's unlawful conduct, the plaintiff is not entitled to damages. Cox, supra, 138 N.J. at 23, 647 A.2d 454. The unlawful conduct does not have to be the sole cause of the harm, however. Varacallo, supra, 332 N.J.Super. at 48, 752 A.2d 807. While ascertainable loss does not have to be specifically calculated at this point in the litigation, and unlawful conduct does not need to be the sole cause of loss, plaintiffs must still demonstrate an ability to establish both elements on a class-wide basis.
Plaintiffs' first method of demonstrating ascertainable loss is based on the purchase price of Vioxx. This theory of recovery asserts that "Merck sold to the class a drug that was not only less than what was promised, but a drug that was actively dangerous to a significant portion of the class ...," and therefore, defendant should refund the entire purchase price. Defendant asserts that this theory does not demonstrate that plaintiffs actually suffered a loss from its conduct; rather, it just articulates what damages would be available, if an ascertainable loss were shown.
*862 In Romano, the Appellate Division examined a damages award under the CFA. The court found that the correct measure of damages was not the entire purchase price of the product in question (an automobile), but rather, the difference between the value of the product as represented and the actual value of the product received. Romano, supra, 399 N.J.Super. at 483-84, 945 A.2d 49. Romano recognized that the damages granted in a fraud case seek to "make `an injured party whole,' and ... are designed to fairly and reasonably compensate the injured party for the damages or losses proximately caused by the alleged consumer fraud." Id. at 483, 945 A.2d 49 (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11, 860 A.2d 435 (2004)). The reward of the entire price in that case went beyond what was required to fairly compensate the plaintiff because he received a benefit from the transaction (an automobile). Ibid A fair calculation of damages for each consumer presents a problem in this action, but an individualized calculation of damages alone does not always merit denial of class status. If the damages in question "differ in degree," this difference should not act as a bar to certification; however, if the damages differ in type, then the differences may act as a bar. Delgozzo, supra, 266 N.J.Super. at 187, 628 A.2d 1080 (quoting In re Asbestos School Litig., 104 F.R.D. 422, 430 (E.D.Pa.1984)) (emphasis added). The question of how damages can fairly be proven is a difficult one, but probably not an insurmountable one. The issue of causal nexus between the loss sustained by each member of the class and the consumer fraud, however, creates an insurmountable barrier to a class action.
Plaintiffs present two theories of causation which would provide a nexus between defendant's unlawful conduct and the class members purchase of the drug. First, plaintiffs argue that defendant's withholding of information with the intent that consumers would rely on it is prima facie proof of causation. Plaintiffs rely on Varacallo for this theory, which states that
[i]f the plaintiffs succeed in proving that [the defendant] withheld material information with the intent that consumers would rely on it in purchasing [the defendant's] policy, the purchase of the policy by a person who was shown the literature would be sufficient to establish prima facie proof of causation.
[Varacallo, supra, 332 N.J.Super. at 49, 752 A.2d 807.]
Although Varacallo does indeed establish an instance in which there may be prima facie causation, the plaintiffs in Local 68 were subject to the same allegations of misrepresentation as alleged in this matter, but the New Jersey Supreme Court there did not find prima facie proof of causation. There, the New Jersey Supreme Court found there was no evidence that the plaintiffs "reacted in a uniform or even similar manner" to the representations of Merck. Local 68, supra, 192 N.J. at 390, 929 A.2d 1076. Rather, the plaintiffs made individualized decisions "concerning the benefits that would be available to its members for whom Vioxx was prescribed." Id at 391, 929 A.2d 1076.
The same logic applicable in Local 68 applies to the purchase of Vioxx by each consumer. The decision of whether to prescribe a medication is made upon a host of individualized factors, including other risk factors plaintiffs possessed and whether other drugs were effective in relieving plaintiffs' pain. Doctors react to medical warnings differently depending on the patient's condition and medical history. An individualized determination would be required for each plaintiff to reveal whether the concealment of the CV risk information had a causal relationship to the patient or *863 doctor's decision whether or not to use or prescribe Vioxx. Taking into consideration these individualized issues, "the commonality of defendant's behavior is but a small piece of the required proofs." Ibid. In this context, as in Local 68, application of a prima facie causation would not be supported by the record. This does not mean there must be proof of reliance, but there still must be a "nexus." In order to fairly determine if a nexus exists for an individual, numerous factors must be considered that differ from consumer to consumer.
The very expert that plaintiffs rely on reveals the individualized nature of the issues. Dr. Rosenthal asserts that Vioxx can be compared to naproxen because naproxen is a product with "the same therapeutic characteristics" as Vioxx, or alternatively that "had Class members understood there was an equally effective (and possibly safer) product at naproxen's price they would not have been willing to pay more than that amount for Vioxx." Neither one of these statements can be demonstrated on a class-wide basis without specific information on each consumer. An examination into what "therapeutic characteristics" naproxen had for potential plaintiffs is an individualized inquiry. What the class members were willing to pay for Vioxx, or naproxen, or any other drug of this category, depends on a multitude of factors including levels of insurance coverage and a subjective determination of effectiveness. For these potential plaintiffs to obtain a recovery of damages on these grounds, a jury would need to consider facts applicable to each plaintiff. Some plaintiffs may have never used another painkiller other than Vioxx. Other plaintiffs may have used naproxen and numerous other NSAIDs without relief of pain before using Vioxx. Some may have achieved significant pain relief. The individual proofs required to show a causal nexus preclude a class action.

b. Unjust enrichment
Plaintiffs also advance a claim for unjust enrichment. Plaintiffs state that they "will show, using the same evidence used to prove the CFA violation, that Merck acted unjustly through its overarching scheme [of] misrepresentations and omissions about the safety and efficacy of Vioxx." As in the CFA claim, defendant asserts that an unjust enrichment claim cannot be made on a class-wide basis, because individualized issues overwhelm common issues, and therefore predominance does not exist.
The intent of an unjust enrichment cause of action is to receive a "disgorgement" of the profits retained by the defendant. Unjust enrichment "involves a two part test: plaintiff must show both that the defendant received a benefit, and that the retention of the benefit without payment would be unjust." Russell-Stanley Corp. v. Plant Indus. Inc., 250 N.J.Super. 478, 510, 595 A.2d 534 (Ch.Div.1991). Retention without payment is unjust if, had "the true facts [been] known to the plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." Callano v. Oakwood Park Homes Corp., 91 NJ.Super. 105, 109, 219 A.2d 332 (App.Div.1966).
Disgorgement of profits is a punitive, not a compensatory, form of damages. There is no law in New Jersey that allows such a recovery in this type of claim.

ii. Typicality
Rule 4:32-1 requires the claims of the representatives to be "typical of the claims or defenses of the class." In re Cadillac, supra, 93 N.J. at 425, 461 A.2d 736. The representatives' claims must *864 have the same "`essential characteristics common to the claims of the class.'" Ibid. (quoting 3B Moore's Federal Practice ¶ 23.06-2 (1982)).
Plaintiffs allege that Kleinman and Martin's claims are typical of the class, because plaintiffs will have to prove the same course of conduct as other class members. Defendant, in response, asserts that the individualized issues of the representatives claims demonstrate that common issues do not predominate.
There are multiple differences presented in the histories of just the two proposed class representatives. Kleinman found that Aleve and Tylenol and Vioxx were equally effective. Kleinman's physician indicated that he would still prescribe Vioxx if it were available, and he himself continued to take Vioxx after it was withdrawn from the market. This was certainly not true of all doctors. Martin found that Vioxx was not always effective and he took hydrocodone at the same time for his pain.
These representatives received a different benefit from the drug. Further, Kleinman's doctor may have chosen to continue to prescribe the drug, even knowing of the CV risks. From this brief examination of their histories, it is apparent that these plaintiffs may not be typical of many of class representatives. It is known from other personal injury trials in the Vioxx litigation that many doctors believe they were deceived by defendant and would have not prescribed the drug if they knew its true risk factors. The patients of these doctors would not be well served by the testimony of Kleinman's doctor. Some patients only got relief from pain from VIOXX® while others got relief from a variety of alternative medications.

iii. Superiority
To grant certification, the court must find "that a class action is superior to other available methods" of adjudication. R. 4:32-1(b)(3). A court must consider, in doing so, "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class," and "the difficulties likely to be encountered in the management of a class action." R. 4:32-1(b)(3). The New Jersey Supreme Court has provided additional requirements for a finding of superiority. The superiority requirement "demands (1) an informed consideration of alternative methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each method." Iliadis, supra, 191 N.J. at 114-15, 922 A.2d 710.
Manageability is a significant issue in considering the superiority of a class action. Id. at 117, 922 A.2d 710. Denial of class status may be merited if there are "serious difficulties with respect to notification and opt-out procedures," or if there are issues with "divergent or various governing law." Id. at 119, 922 A.2d 710. The reasons for denial cannot be "mere speculation of complications that may arise." Ibid The potential problems with opt-out procedures and notice that defendant points to are ambiguous and speculative, and are accordingly not a reason for denial of certification.
The New Jersey Supreme Court has recognized that a class action may be the only form of resolution for some claims, and failure to grant a class action may sound a "death knell" for the claims of the individuals in those instances. Id. at 117, 922 A.2d 710. In this matter, there may not be an alternative, superior form of resolution for these claims, considering the small size of the damages alleged for each member of the class. This decision may indeed be a death knell to the claims of *865 most individual consumers. However, this court cannot find that a class action is a superior form of resolution either. The lack of predominance creates manageability issues. Establishing a "causal nexus" examination would require individualized inquiries into the plaintiffs histories and backgrounds. Even if a New Jersey-only class is granted, problems with individualized issues of proof would be unmanageable.
There have been inconsistent outcomes in previous litigation of CFA claims in Vioxx cases. Defendant points out that that a CFA claim was rejected in Doherty v. Merck, L-0638-05-MT (Law Div. March 29, 2007) (slip op. at 1). Boyd v. Merck was summarily dismissed by this court when the plaintiff testified that he would still take Vioxx today, knowing of all the risks. Boyd v. Merck, L-1615-03-MT (Law Div. Jan. 30, 2006) (slip op. at 1). These inconsistent outcomes demonstrate that it would be unfair to defendant to certify a class and allow a jury to reach a uniform determination of liability where results could vary from plaintiff to plaintiff. For all these reasons, the court cannot find that a class action is a superior mechanism for adjudication of these claims.

III. Choice of Law
Despite the issues presented with choice of law in Local 68, the New Jersey Supreme Court declined to find choice of law as the "lynchpin for class certification." Local 68, supra, 192 N.J. at 388, 929 A.2d 1076. Rather, in that decision, the Court chose to "analyz[e] more generally the assertions about predominance and superiority." Ibid. The Court specifically expressed "no view" about the Appellate Division's choice of law analysis. Id. at 388 n. 3, 929 A.2d 1076.
This decision also does not focus on choice of law, though extensively briefed, as the reason for denial of the certification. An examination into the requirements of the CFA demonstrates that an overwhelming number of individualized issues predominate. The lack of predominance, of common issues, and need for the jury to consider multiple individual factors in order to find a causal nexus under the CFA, and the issues discussed in the superiority assessment provide a sufficient basis for denial of the request for class certification.